**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JULIE ANDERSON,

      **Plaintiff,**

                                **Case No.:**

**v.**

**CITY OF ST. PETE BEACH,**

      **Defendant.**

_____/

## COMPLAINT

Plaintiff Julie Anderson, by and through her undersigned counsel, hereby sues Defendant City of St. Pete Beach (the "City"), and alleges the following:

### I.     INTRODUCTION

1. This is an action for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and for discrimination in wages in violation of the Equal Pay Act of 1963 (the "EPA"), 29 U.S.C. 206(d).

2. Plaintiff, a female employee, was subjected to discriminatory treatment based on her sex and was terminated after opposing unlawful discrimination.

1

3. Defendant's actions caused Plaintiff to suffer lost wages, loss of benefits, including a lucrative retirement plan, emotional distress, deterioration of her health, and other damages.

4. In addition, Plaintiff had no choice but to accept a position in Washington State, which required an expensive cross-country move and which has had a negative impact on her children.

## II.    JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3) and 29 U.S.C. § 216(b).

6. Venue is proper in this District because the unlawful employment practices alleged herein occurred in Pinellas County, Florida, within the Tampa Division of the Middle District of Florida.

7. At all material times, Defendant was an "employer" within the meaning of Title VII.

8. At all material times, Defendant was an "employer" within the meaning of the EPA.

## III.    PARTIES

9.  Plaintiff, Julie Anderson, is a female and was a resident of Pinellas Country, Florida at all material times.

10. Defendant, City of St. Pete Beach, is a municipal corporation organized under the laws of the State of Florida and was Plaintiff's employer at all material times.

## IV.    ADMINISTRATIVE PREREQUISITES

11. On April 30, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 511-2024-02689, alleging sex discrimination and retaliation.

12. On January 16, 2026, the EEOC issued a Notice of Right to Sue.

13. This action is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

14. All conditions precedent to the filing of this action have been satisfied, waived, or otherwise fulfilled.

## V.    STATEMENT OF FACTS

15. On or about October 7, 2019, Defendant hired Plaintiff as a Deputy Building Official.

16. On or about June 12, 2023, an anonymous letter was issued to the City's Mayor and Commissioners alleging that City Manager Alex Rey (the "City Manager") had misappropriated funds and engaged in discriminatory hiring and promotion practices.

17. In response to the anonymous letter, the City Commission launched an investigation of the City Manager and his office, and authorized City Attorney Andrew Dickman (the "City Attorney") to oversee the investigation.

18. During the investigation, female managers realized they were being targeted.  Over a span of three months, six female, minority, and/or LGBTQ+ employees resigned, one of whom was Plaintiff's direct supervisor, Community Development Director Michelle Gonzalez (female).

19. On or about September 28, 2023, following the conclusion of the investigation, the City Manager negotiated a lucrative severance package with the City in exchange for his resignation.

20. Prior to his departure, the City Manager promoted Plaintiff to Acting Community Development Director.

21. The City Manager attempted to increase Plaintiff's salary due to her new position.  However, the City Attorney informed the City Manager that Plaintiff's salary could not be increased due to the pending investigation.

22. Pursuant to Defendant's Personnel Rules and Regulations, pay increases for temporary and acting positions are to be automatically applied.

23. Plaintiff withdrew her acceptance of the Acting Community Development Director position due to the refusal to increase her compensation consistent with Defendant's policies.

24. On or about October 4, 2023, Plaintiff met with Interim City Manager Wayne Saunders (the "Interim City Manager").

25. During the meeting, Plaintiff verbally complained that during the investigation interviews, she and other female employees were questioned about their own qualifications, experience, and the legitimacy of their hiring and promotion.  These female employees were also asked about the qualifications and experience of the other females on the management team. Notably, they were not questioned about the qualifications and experience of the male employees, as would have been necessary for any fair evaluation of their roles.

26. Plaintiff expressed her belief that the questioning of only the female managers constituted sex-based discriminatory treatment.

27. Plaintiff also expressed that she had been previously harassed by two former male managers, and that she and many of the other female

employees did not feel that it was a safe place for women to work. She added that the former Community Development Director, who had been hired by the Interim City Manager, had harassed multiple female employees, including Plaintiff, which created a hostile work environment. After the former Community Development Director's demotion and subsequent resignation, the work environment and morale in the department improved significantly.

28. In one case, the former Community Development Director (male) was found to have engaged in gender discrimination and harassment, resulting in a lawsuit against the City, resolved through settlement payments made to the claimant.  Notably, the harasser was not terminated for his conduct and resulting harm to the claimant and the City; rather, he was only demoted months later.

29. In short, the City was well aware of discrimination issues existing within its workplace.  The Interim City Manager responded that he "hated hearing all this," but took no action, and brushed off Plaintiff's concerns.

30. In or around early November 2023, Plaintiff complained to the Interim City Manager that a subordinate who reported to Plaintiff – who was a male – had been retroactively promoted, and had received

a significant retroactive pay increase, resulting in the subordinate earning more than Plaintiff.

31. Plaintiff complained that the disparity in compensation was unfair and discriminatory, and that her own pay should have been increased at the same time, as she was the subordinate's supervisor.

32. The Interim City Manager said he would look into it, but he never followed up with Plaintiff.

33. At her next meeting with the Interim City Manager, Plaintiff raised the pay disparity between her and the male subordinate a second time.

34. The Interim City Manager dismissed Plaintiff's concerns and stated he needed to wait for the results of a pay study before he could do anything.

35. On or about January 4, 2024, shortly after Plaintiff's complaints about discriminatory pay practices, the Interim City Manager terminated Plaintiff's employment.

36. Plaintiff later learned that the decision to terminate her employment was made well before Christmas 2023.

37. During the termination meeting with the Interim City Manager, Plaintiff requested the reason for her termination.

38. The Interim City Manager did not identify any performance or conduct deficiency and stated only that Plaintiff was an "at-will" employee, and her services were no longer needed.

39. Prior to her termination, Plaintiff had not received any written or verbal discipline by the Interim City Manager to indicate concerns with her performance, and had no Performance Improvement Plan.

40. Previously, a male Community Development Director who was accused of sexual harassment was only demoted, rather than terminated.

41. Shortly before Plaintiff's termination, the Interim City Manager approached Mark Vasquez, a male building official, offering him the role and responsibilities then held by Plaintiff. Mr. Vasquez responded "what about Julie" [Plaintiff], and the Interim City Manager replied "I'll take care of her."

42. Mr. Vasquez did not realize the Interim City Manager would terminate Plaintiff, or he would have argued strongly against this decision.

43. Shortly thereafter, but before Plaintiff was terminated, Mr. Vasquez resigned from his position due to the hostile work environment resulting from the investigation.

44. The day after Plaintiff's termination, the Interim City Manager offered Mr. Vasquez $110.00 per hour ($228,800 annualized) to assume the role and responsibilities previously held by Plaintiff.  At the time of Plaintiff's termination, her salary was $116,800 (i.e., $112,000 less than the pay offered to Mr. Vasquez).

45. Mr. Vasquez declined the offer and stated he could not perform the job without Plaintiff.  He also questioned why the Interim City Manager did not consult with him prior to terminating Plaintiff.

46. Plaintiff's termination occurred shortly after her complaints regarding sex-based treatment and pay disparity.

47. On April 8, 2024, the final report from the investigation into the City Manager was published by the City Attorney's office. The report erroneously referred to women being promoted to management positions without the proper qualifications and experience.

48. In addition, the Public Works Director – a male employee – submitted a document to the attorneys conducting the investigation that listed his disparaging speculations about the qualifications of every female manager and director hired or promoted by Mr. Rey, including Plaintiff, and questioned the fairness of those decisions.

49. On or about October 31, 2024, the Public Works Director was terminated by the City Manager Frances Robustelli (the "New City Manager") and given the option to resign.

50. Around that time, the New City Manager was overheard saying that the Public Works Director was terminated due to a lawsuit against the City.

## COUNT I
## VIOLATION OF TITLE VII – SEX DISCRIMINATION

51. Plaintiff realleges and incorporates herein by reference Paragraphs Nos. 1 through 50 above.

52. Plaintiff is a member of a protected class (female).

53. Plaintiff was qualified for her position.

54. Plaintiff suffered adverse employment actions due to her sex, including the termination of her employment.

55. Similarly situated male employees were treated more favorably, including but not limited to: (a) a male subordinate retroactively promoted and receiving higher compensation; (b) a male Community Development Director who engaged in sexual harassment was demoted rather than terminated; and (c) her role and responsibilities were offered to a male, at a substantially higher rate of pay.

10

56. Defendant failed to offer any legitimate, non-discriminatory basis for Plaintiff's termination or other adverse employment actions.

57. Defendant's actions were motivated by Plaintiff's sex.

58. As a direct and proximate result, Plaintiff suffered damages including lost wages, loss of benefits (including a lucrative retirement plan), emotional distress, deterioration of her health, and other compensatory damages.

59. Out of necessity, Plaintiff accepted a position in Washington, which forced a cross-country move that was both financially burdensome and severely detrimental to her children.

WHEREFORE, Plaintiff respectfully requests:

   a. Back pay;

   b. Lost employment benefits;

   c. Lost severance pay;

   d. Loss of future earnings and/or front pay;

   e. Loss of future retirement investment by the City;

   f. Financial losses associated with her relocation, including the cost of the move and the higher cost of living, necessitating the sale of her Florida home of 10 years;

   g. Emotional distress, humiliation, and mental anguish;

11

h.  Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

i.  Prejudgment interest; and

j.  Any other relief deemed just and proper.

## COUNT II
## VIOLATION OF TITLE VII – RETALIATION

60. Plaintiff realleges and incorporates herein by reference Paragraphs Nos. 1 through 50 above.

61. Plaintiff engaged in statutorily protected activity, including her complaints to the Interim City Manager that female employees were being treated differently during the investigation and that compensation disparities favored male employees.

62. Defendant was aware of Plaintiff's protected activity.

63. Plaintiff suffered an adverse employment action when she was terminated.

64. Plaintiff's termination occurred within close temporal proximity to her protected complaints.

65. Defendant's proffered reason for termination was pretextual.

66. Defendant terminated Plaintiff because she engaged in protected activity.

67. As a direct and proximate result, Plaintiff suffered damages including lost wages, loss of benefits (including a lucrative retirement plan), emotional distress, deterioration of her health, and other damages.

WHEREFORE, Plaintiff respectfully requests:

    a.  Back pay;

    b.  Lost employment benefits;

    c.  Loss of severance pay;

    d.  Loss of future earnings and/or front pay;

    e.  Loss of future retirement investment by the City;

    f.  Financial losses associated with the relocation, including the cost of the move and the higher cost of living, necessitating the sale of her Florida home of 10 years;

    g.  Emotional distress, humiliation, and mental anguish;

    h.  Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

    i.  Prejudgment interest; and

    j.  Any other relief deemed just and proper.

**COUNT III**
**VIOLATION OF EQUAL PAY ACT**

68. Plaintiff realleges and incorporates herein by reference Paragraphs Nos. 1 through 50 above.

69. Due to Plaintiff's sex, the City paid her unequal and lesser wages than those paid to males within her establishment, for equal work on jobs requiring equal skill, effort and responsibility, which were performed under similar work conditions.

70. Specifically, in or around December 2023, the City offered a male employee the role and responsibilities then held by Plaintiff, but at an annual rate of pay $112,000 higher than that paid to Plaintiff.

71. The position and work offered to the male employee required equal skill, effort and responsibility as the role held by Plaintiff, and was to be performed under similar working conditions, in the same establishment.

72. The differential in pay between Plaintiff, a female, and her male peer was not due to seniority, merit, quantity, or quality, or any other pertinent factor, but rather was due to her sex, in direct violation of the EPA.

73. As a direct and proximate result, Plaintiff suffered damages including lost wages and other damages.

WHEREFORE, Plaintiff respectfully requests:

    a. Back pay;

    b. Liquidated damages;

    c.  Attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

    d.  Prejudgment interest;

    e.  Any other relief deemed just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury as to all issues so triable.

**DATED** this 8th day of April 2026.

Respectfully submitted,


/s/ M. Sean Moyles
M. Sean Moyles
Florida Bar No. 0080756
E-mail: SMoyles@LangstonHess.com
Secondary:
MAtherholt@Langstonhess.com
LANGSTON, HESS & MOYLES, P.A.
600 Druid Rd. E.
Clearwater, Florida  33756
Telephone: (727) 479-1900
Counsel for Plaintiff